IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| ANDREW WILLIAM ECKERD, | |
| Plaintiff, | CIVIL ACTION NO.: 2:21-cv-97 |
| v. | |
| DR. JEFFREY GUNDERSON; and E. NEAL JUMP, | |
| Defendants. | |

# REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant E. Neal Jump's Motion to Dismiss. Doc. 22. Defendant Jump moves to dismiss based on Plaintiff's failure to exhaust his available administrative remedies. Plaintiff filed a Response, opposing Defendant's Motion. Doc. 30. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendant Jump's Motion to Dismiss and **DISMISS** Plaintiff's Complaint.[1] Doc. 22. Because I have recommended dismissal of Plaintiff's Complaint, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*.

## PROCEDURAL HISTORY

Plaintiff brought this suit, asserting claims under 42 U.S.C. § 1983, alleging he is not receiving proper medical treatment while incarcerated at Glynn County Detention Center

---

[1] A suggestion of death was filed for Defendant Dr. Jeffrey Gunderson on April 13, 2022. Doc. 35. Plaintiff has not moved to substitute under Federal Rule of Civil Procedure 25. Nonetheless, the grounds for dismissal advanced by Defendant Jump are equally applicable to Defendant Gunderson. As a result, the Court should also **DISMISS** Defendant Gunderson.

("GCDC"). Docs. 1, 14. After conducting frivolity review, the Court permitted Plaintiff's deliberate indifference to a serious medical needs claim to proceed against Defendants Gunderson and Jump. Doc. 15 at 1. Plaintiff alleges Defendants refused to provide him with medical treatment, in violation of his Fourteenth Amendment rights.

In his Motion to Dismiss, Defendant Jump argues Plaintiff's claims against him should be dismissed because Plaintiff failed to properly exhaust his available administrative remedies prior to filing suit. Doc. 22. Alternatively, Defendant Jump argues Plaintiff's claims against him should be dismissed because he fails to state a claim. Id. Plaintiff filed a Response, opposing Defendant Jump's Motion to Dismiss. Doc. 30.

## DISCUSSION

**I.    Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into

2

account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the

3

administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.   Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche, 783 F.3d at 121; Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for suing, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the

4

accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in

5

the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero, 2018 WL 3861351, at *1. This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III. Applying <u>Turner</u>

#### A. GCDC Administrative Remedies

Under the GCDC Inmate Grievance Procedures, if an inmate alleges a violation of his civil rights, the inmate is referred to the formal grievance system. Doc. 22-2 at 1, 5. Once an inmate is referred to the formal grievance system, he may file a written grievance within five days of discovery or when he reasonably should have discovered the incident. <u>Id.</u> The grievance must be responded to within 15 days of being submitted. <u>Id.</u> at 6. Upon receiving a response to the grievance, an inmate has three days to accept the findings and action taken or appeal to the jail administrator. <u>Id.</u> at 2, 6. If an inmate appeals the decision, he is to provide the written reasons for his appeal to the jail administrator. <u>Id.</u>

#### B. Plaintiff Failed to Exhaust His Available Administrative Remedies

##### *1. Plaintiff's claims survive under <u>Turner</u> step one.*

At step one under <u>Turner</u>, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." <u>Turner</u>, 541 F.3d at 1080–82.

Plaintiff filed this suit on October 10, 2021.[2] Doc. 1 at 11. Plaintiff was required to exhaust all available administrative remedies prior to that date. Plaintiff states he filed and appealed grievances related to the issues that gave rise to his claims in this case. <u>Id.</u> at 7.

---

[2] The Court received Plaintiff's Complaint on October 15, 2021, but the Complaint was signed October 10, 2021. Doc. 1 at 11. The applicable date for exhaustion purposes is the date the plaintiff signed the complaint and not the filing date. <u>Daker v. Owens</u>, No. 6:14-CV-47, 2021 WL 725668, at *4 (S.D. Ga. Feb. 22, 2021) (citing <u>Merilien v. Caldwell</u>, No. 3:18-CV-056, 2020 WL 5763609, at *2 (S.D. Ga. Sept. 28, 2020) (concluding "a prisoner 'brings' a civil action when he signs the complaint instead of when the clerk files the complaint is consistent with the purpose of § 1997e(a), which is to require exhaustion before a prisoner initiates litigation to avoid premature interruption of the administrative process.")). October 10, 2021 is the operative filing date. However, whether Plaintiff filed his Complaint on October 10, 2021, or October 15, 2021, is immaterial to the Court's exhaustion analysis.

Plaintiff makes the same representations—that he exhausted the grievance process—in response to Defendant's Motion to Dismiss.  Doc. 30 at 3, 5, 10.  Looking solely at Plaintiff's allegations, they are enough to survive a motion to dismiss for failure to exhaust his administrative remedies under the first step of the Turner test.

### 2. *Plaintiff's claims fail under Turner step two.*

The parties' filings present a factual question under Turner step two.  Specifically, the parties dispute whether Plaintiff properly filed and appealed his grievances and whether the appeals process was available to Plaintiff.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts."  Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008).  Nevertheless, a district judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies.  Bryant, 530 F.3d at 1374 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)).  The Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment, and courts in this district have applied that principle equally when making factual determinations under Turner step two.  See Womack, 2008 WL 4104148 at *5–6 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).  Thus, to the extent Plaintiff relies upon his own self-serving allegations, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Id. (citing Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

This analysis begins with the burden.  Failure to exhaust is an affirmative defense which, like other affirmative defenses, puts the burden of proof squarely on defendants.  See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff

8

has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial).  Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'"  Womack, 2008 WL 4104148, at *6 (quoting Jeffreys, 426 F.3d at 555).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue").  Here, both parties have submitted argument or evidence on the issue of exhaustion, demonstrating the parties have had ample opportunity to develop the record.

Defendant Jump contends Plaintiff failed to exhaust his administrative remedies prior to suing.  Though, at times, Plaintiff asserts he exhausted his administrative grievances, in other parts of the record Plaintiff, essentially concedes he did not exhaust his administrative remedies before October 10, 2021.  Doc. 30 at 5–10.  At base, Plaintiff asserts exhaustion is proper

because he exhausted prior to paying the filing fee. Doc. 30 at 3. Plaintiff seems to suggest he was not required to exhaust his available administrative remedies until he paid the filing fee (as opposed to when he filed this suit). Plaintiff is wrong. The law is clear: Plaintiff must exhaust administrative remedies before filing suit. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The PLRA and applicable law make no reference to exhaustion occurring before the filing fee is paid.

The record before the Court shows Plaintiff did not exhaust prior to filing his Complaint. Plaintiff filed 377 grievances and requests, with 23 grievances related to his medical treatment. Doc. 22-2 at 2. However, Plaintiff only appealed a single grievance related to his medical treatment, and that grievance was filed and appealed after Plaintiff filed his Complaint. Id. (citing Doc. 22-4).[3] Grievances filed and appealed after a complaint has been filed cannot serve as the basis for proper exhaustion. See Jones, 549 U.S. at 202; Harris, 216 F.3d at 974. Plaintiff has submitted no evidence showing proper exhaustion beyond his own self-serving statements.[4]

Plaintiff alternatively asserts administrative remedies are unavailable due to the use of a pod kiosk at GCDC instead of physical paper forms, and this relates specifically to his ability to appeal disposition of his grievances. Doc. 30 at 4–5. In Ross v. Blake, the Supreme Court outlined three situations where an administrative procedure is unavailable: (1) when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) when an administrative scheme is so opaque it becomes incapable of use;

---

[3] Plaintiff also appealed a grievance unrelated to the issue of his medical care. Doc. 30-1 at 4.

[4] Plaintiff also submits a number of grievances in support of his claim he properly exhausted. Doc. 30-1 at 2–10. Several of these grievances were submitted after Plaintiff filed suit. Id. at 2, 3–4, 6. Even for the ones which were submitted pre-suit, there is no indication Plaintiff appealed the disposition of the grievances. Id. at 5, 7, 8–10. Plaintiff's submissions do not demonstrate proper exhaustion.

and (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. 136 S. Ct. at 1859–60.

Plaintiff alleges the third Ross circumstance is present—that the administrative remedies scheme is unavailable because appeals are practically impossible. The record contradicts Plaintiff's assertions that administrative remedies were unavailable. As described above, Plaintiff appealed grievances while at GCDC—he just failed to do so before filing this Complaint. Doc. 22-2 at 2; Doc. 22-4; Doc. 30-1 at 4. Considering this, the evidence plainly and convincingly contradicts Plaintiff's contention he was unable to appeal his grievances. See, e.g., Kozuh v. Nichols, 185 F. App'x 874, 878 (11th Cir. 2006) (determining the district court properly held the plaintiff failed to exhaust administrative remedies, where, despite the plaintiff's contentions, evidence showed he was able to file numerous complaints). Moreover, Plaintiff relies entirely upon his own unsworn self-serving accusations, which is insufficient, particularly considering the record in this case and evidence offered by Defendants. See Womack, 2008 WL 410418, at *6 (holding the plaintiff's self-serving statements were inadequate to show that administrative remedies were unavailable). That is, "[p]laintiff cannot show that administrative remedies were unavailable simply by making a blanket allegation without any supporting evidence." Id. I find a reasonable juror would not undertake the suspension of disbelief necessary to credit Plaintiff's allegations. Therefore, I conclude Plaintiff failed to exhaust his available administrative remedies.

Thus, Plaintiff's claims are due to be dismissed for failure to exhaust available administrative remedies prior to filing suit. Plaintiff failed to appeal his grievances before filing this lawsuit against Defendant Jump. Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–

92. Plaintiff's failure to appeal his grievances related to his lack of medical treatment before brining suit means his claim against Defendant Jump is due to be dismissed for failure to exhaust. Accordingly, I **RECOMMEND** the Court **GRANT** Defendant Jump's Motion to Dismiss.

IV.     **Leave to Appeal** *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendant's Motion to Dismiss and Plaintiff's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendant Jump's Motion to Dismiss and **DISMISS** Plaintiff's Complaint.  Doc. 22.  Because I have recommended dismissal of Plaintiff's Complaint, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A

13

party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 17th day of May, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA